FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2009 SEP -4  PM 5: 00

LORETTA G. WHYTE
CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

Angelle Leblanc                                                 CASE NO.

Plaintiff,

VS.

WYETH, INC., SCHWARZ PHARMA, INC.,            **09-6122**
PLIVA USA, INC., BARR PHARMACEUTICALS, INC.,
ACTAVIS, INC., AND  ACTAVIS ELIZABETH LLC,    **SECT. A MAG. 2**
Defendants.

## COMPLAINT

Plaintiff, Angelle Leblanc, brings this action against Defendants, WYETH, INC., SCHWARZ

PHARMA, INC., PLIVA USA, INC., BARR PHARMACEUTICALS, INC., ACTAVIS, INC., AND

ACTAVIS ELIZABETH LLC, (collectively "Defendants"), and for her complaint alleges, upon

information and belief and based on the investigation to date of their counsel, as follows:

### INTRODUCTION

### PARTIES

1.  Plaintiff, Angelle Leblanc, is an individual who is a resident and citizen of Marrero,

Jefferson Parish, Louisiana.

2.  Defendant Wyeth, Inc. d/b/a Wyeth (hereinafter referred to as "Wyeth") is a

Delaware corporation with its principal place of business in New Jersey. References to

Wyeth include Wyeth individually, and collectively all divisions and/or subsidiaries, as well

as successor-in-interest to A.H. Robins, Inc., American Home Drugs Corporation and ESI,

Lederle, Inc.

3.  Defendant Schwarz Pharma, Inc., (hereinafter referred to as "Schwarz") is a


Fee $350-
Process
Dktd
CtRmDep
Doc. No.

Delaware corporation with its principal place of business in Mequon, Wisconsin.

References to Schwarz include Schwarz individually, and collectively all of its predecessors

in interest and divisions. Schwarz may be served with process through its registered agent:

CSC Entity Services, LLC, 103 Foulk Road, Suite 200, Wilmington, Delaware 19803.

4.    Defendant Pliva USA, Inc., (hereinafter referred to as "Pliva") is a New York

corporation with its principal place of business in New Jersey. Pliva is a wholly owned

subsidiary of Barr Pharmaceuticals, Inc. Pliva may be served with process through its

registered agent: Corporation Trust Company, 820 Bear Tavern Road, 3rd Floor, West

Trenton, New Jersey 08628. Barr Pharmaceuticals, Inc. is being sued herein as the owner of

Pliva and may be served with process at 225 Summit Avenue, Montvale, New Jersey 07645.

Hereafter, Pliva and Barr Pharmaceuticals, Inc. will be collectively referred to as "Pliva."

5.    Defendant Actavis Elizabeth LLC, (hereinafter referred to as "Actavis") is a

Delaware corporation with its principal place of business in New Jersey. Actavis is a wholly

owned subsidiary of Actavis, Inc. Actavis may be served with process at its principal place

of business: 200 Elmora Avenue, Elizabeth, New Jersey 07207. Actavis, Inc. is being sued

herein as the owner of Actavis and may be served with process at 14 Commerce Drive,

Suite 301, Cranford, New Jersey 07016. Hereafter, Actavis and Actavis, Inc. will be

collectively referred to as "Actavis."

## VENUE AND JURISDICTION

6.    Both jurisdiction and venue are proper in the Eastern District of Louisiana. The

Defendants conduct or have conducted business activity in Jefferson Parish, Louisiana and

the Defendants have distributed products throughout Jefferson Parish. Plaintiff purchased

and consumed the Defendants' products in the Eastern District of Louisiana.

7.   Jurisdiction is based on complete diversity between the Plaintiff and all of the Defendants pursuant to 28 U.S.C. § 1332.

8.   Venue is proper as to causes of action against all Defendants because:

1. A substantial part of the cause of action accrued in the State of Louisiana in that Plaintiff received and consumed the Defendants' pharmaceutical products in Jefferson Parish, Louisiana and sustained injury in Jefferson Parish, Louisiana.

2. All of the Defendants have directed their products into Jefferson Parish, Louisiana.

3. All of the Defendants have sold their products in Jefferson Parish, Louisiana.

4. Jefferson Parish sits in the Eastern District of Louisiana.

9.   The amount in controversy exceeds $75,000.00.

## STATEMENT OF FACTS

10.   Plaintiff brings this action for the purpose of recovering damages for the personal injuries Plaintiff has suffered as a result of being prescribed and ingesting Reglan, metoclopramide and/or metoclopramide HCl (hereinafter referred to as "Reglan/metoclopramide").

11.   At all times material hereto, Defendant Wyeth was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities Reglan/metoclopramide in the state of Louisiana and in interstate commerce. Wyeth manufactures and distributes generic metoclopramide through its ownership of ESI Lederle, Inc. (hereinafter "ESI"), a former subsidiary which merged into Wyeth.

12.   At all times material hereto, Defendant Schwarz, one of its predecessors in

interest, and/or one of its family of wholly owned divisions was engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties, as successor in interest, or other related entities, Reglan/metoclopramide in the State of Louisiana and in interstate commerce.

13. At all times material hereto, Defendant Pliva was engaged in the business to testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/metoclopramide in the State of Louisiana and in interstate commerce.

14. At all times material hereto, Defendant Actavis was engaged in the business to testing, developing, manufacturing, labeling, marketing, distributing, promoting and/or selling, either directly or indirectly, through third parties or related entities, Reglan/metoclopramide in the State of Louisian and in interstate commerce.

15. At all relevant times, Defendants were acting by and through their agents, servants and/or employees, each of whom were acting within the scope and course of their employment by agency or authority on their behalf.

16. At all times relevant hereto, Defendants were in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, and/or advertising the pharmaceutical drugs known as Reglan/metoclopramide in the State of Louisiana and in interstate commerce.

17. Plaintiff ingested the Reglan/metoclopramide.

18. Plaintiff's ingestion of the Reglan/metoclopramide caused their

Injuries.

19.  Plaintiff was not aware of information different from or contrary to the inaccurate, misleading, materially incomplete, false and/or otherwise inadequate information disseminated in the PDR, RLD, or by the NDA Holders.

20.  Plaintiff exhibited abnormal movements which have been linked to use of Reglan/metoclopramide.

21.  Plaintiff's use of Reglan/metoclopramide, as prescribed, resulted in exposure to the drugs which caused Plaintiff to suffer serious, permanent and disabling injuries, including but not limited to, injuries of or associated with the central nervous and extrapyramidal motor systems.

22.  Plaintiff's serious and permanent injuries, as described above, came about as a foreseeable and proximate result of Defendants' dissemination of inaccurate, misleading, materially incomplete, false and otherwise inadequate information concerning the potential effects of exposure to and long-term ingestion of Reglan/metoclopramide to the medical community, Plaintiff, and other foreseeable users of the drug.

23. Plaintiff experienced medical and related expenses, loss of ability to provide household services, disfigurement, disability, pain, suffering, psychological injury and other injuries and damages doe to the prescription and ingestion of this drug.

24.  This case involves Defendants' failure to warn doctors and patients of information within their knowledge or possession which indicated that the subject Reglan/metoclopramide, when taken for more than 12 weeks, caused serious, permanent and debilitating side effects.

25.  Defendants jointly and severally marketed, manufactured and distributed

Reglan/metoclopramide and encouraged the long term use of these drugs, and concealed the drug's dangerous side effects.

26. Reglan/metoclopramide is indicated only as short-term therapy for nausea, symptomatic gastroesophageal reflux and acute and recurrent diabetic gastroparesis.

27. Reglan/metoclopramide is indicated only for use for no greater than 12 weeks; however, Defendants represented that Reglan/metoclopramide was safe for use to treat nausea and/or esophageal reflux and/or gastroparesis for durations that exceed 12 weeks.

28. Patients who use Reglan/metoclopramide for long periods are at a significantly increased risk of developing a severe and permanent neurological movement disorder called Tardive Dyskinesia.

29. Other serious side effects caused by ingesting Reglan/metoclopramide for long periods include, but are not limited to, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dyskinesia, tardive dystonia, visual disturbances and interference with drug metabolism.

30. Patients who use Reglan/metoclopramide for periods that exceed 12 weeks are at a greater risk of developing these serious and permanent injuries.

31. Wyeth is the successor-in-interest to A.H. Robins Company, Inc., which first obtained approval by the United States Food and Drug Administration (hereinafter referred to as "FDA") to distribute metoclopramide, under the brand name "Reglan" under the FDA's New Drug Application (NDA)1 schema in 1983.

32. Defendant Wyeth's predecessor in interest, A.H. Robins Company, Inc. expressly warranted to physicians that Reglan/metoclopramide is safe for long-term use.

33. A.H. Robins knew that its warranties regarding safety for long-term use would be relied upon by ordinary, reasonable and prudent physicians who would share that information with other physicians in their communities and that eventually physicians would come to rely on A.H. Robins' express warranties about Reglan/metoclopramide's safety for long-term use.

34. A.H. Robins' express warranties about the safety of Reglan/metoclopramide for long-term use were false and intentionally and negligently misleading.

35. As successor-in-interest to A.H. Robins Company, Inc., Wyeth is legally responsible for the conduct, fraudulent and negligent acts, intentional and willful omissions, and misleading representations and warranties made my A.H. Robins Company, Inc. concerning the safety and adequacy of Reglan/metoclopramide, and all liabilities stemming therefrom.

36. Wyeth manufactured, marketed and distributed Reglan, metoclopramide, and/or metoclopramide HCl through its Wyeth-Ayerst Laboratories Division in St. Davids, Pennsylvania and through its ownership of "ESI."

37. Wyeth knew that it must fully disclose material safety data and information regarding a new drug's chemistry, proposed manufacturing process, proposed model labeling, including warnings about risks and side effects, and test results involving animal studies, clinical studies, and the drug's bioavailability.

38. Wyeth knew that the data and information would be relied upon by the medical community, physicians, Plaintiff and other foreseeable users of Reglan/metoclopramide once the NDA was approved and Wyeth was listed and the Reference Listed Drug Company for the drug.

39. Wyeth intentionally and negligently disseminated misleading information to physicians across the county, through the PDR, about the risks of long-term ingestion of Reglan/metoclopramide and the increased risk of extrapyramidal side effects, including tardive dyskinesia.

40. Defendant Schwarz purchased from Wyeth the rights and *liabilities* associated with Reglan/metoclopramide, the terms of which, upon information and belief, obligated Schwarz to be responsible for claims related to the ingestion or use of Reglan/metoclopramide.

41. Defendant Schwarz entered into an indemnification agreement with Wyeth over the purchase of the innovator, Wyeth's, Reglan, which included disclosure of clinical studies on Reglan/metoclopramide that were not publicly available.

42. Because Defendant Schwarz acquired Defendant Wyeth's Reglan/metoclopramide assets and liabilities while Wyeth was involved in ongoing litigation regarding Reglan/metoclopramide, and nevertheless agreed to indemnify Wyeth against all claims related to the ingestion of the drug, Schwarz knew or should have known that the NDA label for Reglan/metoclopramide (Wyeth's label) misrepresented the safety of the drug, withheld warnings of the known side effects of the drug, and knew or should have known of the safety issues surrounding it.

43. Under the FDA schema, Wyeth was and is the Reference Listed Drug Company (RLD), under a specific NDA, for Reglan/metoclopramide.

44. Under the FDA schema, Defendant Schwarz was and remains the RLD and/or NDA Holder for Reglan/metoclopramide.

45. At all times material hereto, Defendants Wyeth and Schwarz, as the NDA Holder

and/or RLD companies, were aware of the serious side effects caused by Reglan/metoclopramide including, but not limited to, tardive dyskinesia, central nervous system disorders, depression with suicidal ideation, akathesia, tardive dystonia, visual disturbances and interference with drug metabolism.

46. Defendants Wyeth and Schwarz have a duty to ensure their warnings to the medical community are accurate and adequate, to conduct safety surveillance of adverse events for the drug, and to report *any* data related to the safety and/or accuracy of the warnings and information disseminated regarding the drug.

47. Defendants Wyeth and Schwarz represented that Reglan/metoclopramide was safe for use to treat gastritis/gastroesophageal reflux, nausea, and gastroparesis knowing that the drug was not safe for that long term use and was dangerous to the health and body of Plaintiff.

48. Defendants Wyeth and Schwarz represented that Reglan/metoclopramide caused minimal side effects knowing that the drug caused central nervous system side effects, and extrapyramidal symptoms, among other side effects, far more frequently than represented.

49. Defendants Wyeth and Schwarz had actual knowledge, through their own studies and studies by independent investigators, that doctors frequently prescribed Reglan/metoclopramide for long-term use that was not safe for patients.

50. Defendants Wyeth and Schwarz had, through their own studies and studies by independent investigators, that nearly one-third of all patients who used Reglan/metoclopramide received it on doctor's prescriptions for 12 months or longer, rather than 12 weeks or less.

51. Defendants Wyeth and Schwarz also had actual knowledge, through research by independent investigators, that the risk of tardive dyskinesia and other extrapyramidal side effects of Reglan/metoclopramide in patients who receive the drug for 12 weeks or longer is approximately 100 times greater than disclosed in package inserts and the PDR.

52. Defendants Wyeth and Schwarz knew, or through the exercise of reasonable care should have known, that many patients who use Reglan/metoclopramide are prescribed it for periods that exceed 12 weeks, and as a foreseeable consequence of their long term use of Reglan, those patients have a greater risk of developing serious and permanent injuries.

53. Defendants Wyeth and Schwarz had actual knowledge of facts which demonstrated that representations in the Reglan/metoclopramide package insert, the PDR and literature they distributed to physicians were false and misleading.

54. Defendants Wyeth and Schwarz failed to correct their monograph and/or disclose that knowledge to the medical community, Plaintiff, and other foreseeable users.

55. It is the public policy of the United States and of this state, as reflected in the Hatch-Waxman Act, to encourage the availability of cheaper, generic drug products that are therapeutically equivalent to name brand products and to encourage the substitution, as appropriate, of such generic products for name brand products in patients' medical therapy.

56. Defendants Wyeth and Schwarz, as prescription drug manufacturers and/or distributors, knew or should have realized that so-called "drug product selection laws," enacted in every state, including this state, authorize or require a prescription for a drug identified by product brand name or by generic name to be filled, subject to certain

limitations, with a generic drug product that is therapeutically equivalent to the name brand drug product.

57. Defendants Wyeth and Schwarz knew or ought to have realized that generic drug manufacturers customarily copy verbatim the package insert for the name brand prescription drug product to give the impression that the information contained in the package inserts accompanying their own generic prescription drugs is accurate and not misleading.

58. Defendants Wyeth and Schwarz knew or ought to have known that the generic drug manufacturers also typically rely upon the marketing efforts of the name brand manufacturer to generate sales of their own products.

59. Defendants Wyeth and Schwarz knew or ought to have realized that physicians commonly consult the information disseminated by the name brand manufacturer, in the PDR or otherwise, and rely upon that information in their decisions concerning the prescribing of those products for their patients.

60. Defendants Wyeth and Schwarz knew of should have known, specifically, that physicians would rely upon the information disseminated to them by the name brand manufacturer, regardless of whether the prescriptions might be filled with either the name brand product, Reglan, or generic Reglan/metoclopramide, and that many patients, in accordance with those prescriptions, would be likely to ingest generic Reglan/metoclopramide.

61. Defendants Pliva and Actavis each submitted an Abbreviated New Drug Application (ANDA) to the FDA, based on representations made by the RLD companies,

requesting permission to manufacture, market, and distribute generic Reglan/metoclopramide.

62.  Under the ANDA process, the Code of Federal Regulations *required* Pliva and Actavis to submit labels for Reglan/metoclopramide initially identical in all material aspects to the reference listed drug label.

63.  Under the Code of Federal Regulations, Pliva and Actavis had a duty to ensure their Reglan/metoclopramide warnings to the medical community were accurate and adequate, to conduct post market safety surveillance, to review all adverse drug event information, and to report any information bearing on the risk and/or prevalence of side effects caused by Reglan/metoclopramide.

64.  Under the Code of Federal Regulations, if Pliva and Actavis discover information in the course of the fulfillment of their duties as outlined above, they must report that information to the medical community, Plaintiff and other foreseeable users of Reglan/metoclopramide to ensure that their warnings are continually accurate and adequate.

65.  Defendants Pliva and Actavis failed to investigate the accuracy of their metoclopramide and/or metoclopramide HCl drug labels.

66.  Defendants Pliva and Actavis failed to review the medical literature for the metoclopramide drug and/or metoclopramide HCl drug.

67.  Defendants Pliva and Actavis relied upon the name brand manufacturer and the referenced listed drug companies to review the aforementioned medical literature for Reglan/metoclopramide.

68.  Under the FDA schema, if the FDA approves a label change as requested by an

ANDA holder, the NDA holder (also referred to as the RLD company) must also amend its label.

69. Defendants Pliva and Actavis failed to communicate the true and accurate risks and/or prevalence of severe neurological side effects resulting from the ingestion of drugs containing Reglan/metoclopramide.

70. Defendants disseminated to physicians, through package inserts, the publication of the PDR, and otherwise, information concerning the properties and effects of Reglan/metoclopramide, with the intention that physicians would rely upon that information in their decisions concerning the prescription of drug therapy for their patients.

71. Defendants knew, or should have known through the exercise of reasonable care, that the package insert for Reglan/metoclopramide substantially understated the prevalence of acute and long-term side effects on ingesting the drug.

72. Defendants failed to use reasonable care to modify the package insert to adequately warn physicians about the true risks of both short-term and long-term use, even after several injured patients filed lawsuits alleging inadequate warnings and produced competent expert testimony supporting their allegations.

73. Defendants owed a duty in all of their several undertakings, including the dissemination of information concerning Reglan/metoclopramide, to exercise reasonable care to ensure that they did not create unreasonable risks of personal injury to others.

74. Reglan/metoclopramide was widely advertised by Defendants as a safe and effective treatment of diabetic gastroparesis, gastroesophageal reflux disease (GERD), nausea and other gastrointestinal disorders.

75. Defendants failed to conduct and report post market safety surveillance on Reglan/metoclopramide.

76. Defendants failed to review all adverse drug event information and to report any information bearing upon the adequacy and accuracy of their warnings, efficacy, or safety, including the risks and/or prevalence of side effects caused by Reglan/metoclopramide.

77. Defendants failed to monitor all relevant scientific literature related to Reglan/metoclopramide.

78. Defendants failed to disclose material safety information regarding the serious and permanent side effects caused by taking Reglan/metoclopramide for long periods of time.

79. Defendants failed to report data, *regardless of the degree of significance,* regarding the adequacy and/or accuracy of their warnings, efficacy or safety of Reglan/metoclopramide.

80. Defendants knowingly concealed from physicians material facts bearing on the interpretation of package insert disclosures that exposure to Reglan/metoclopramide can lead to tardive dyskinesia and other extrapyramidal side effects, that the risk is "believed" to increase with duration of therapy and total cumulative dose, and that therapy for longer than 12 weeks "cannot be recommended."

81. Defendants concealed the fact that earlier false information disseminated by A.H. Robins Company and/or Wyeth representing long-term Reglan/metoclopramide therapy to be reasonably safe, was unscientific and false.

82. Defendants concealed the fact that Reglan/metoclopramide is a neuroleptic agent and dopamine antagonist, which can be expected to lead to tardive dyskinesia and other extrapyramidal side effects with approximately the same high frequency, particularly in longer term use, as other neuroleptic drugs and that epidemiological studies have consistently confirmed this expectation.

83. Defendants also concealed the fact that the treatment of chronic or intermittent gastroesophageal reflux and/or diabetic gastroporesis, nausea, and/or other gastric disorders with

Reglan/metoclopramide for longer than 12 weeks is unlikely to be reasonably safe.

84. Some or all of the Defendants, as a result of their participation as defendants in previous litigation concerning Reglan/metoclopramide products received clear notice of Wyeth's suppression of important safety information concerning Reglan/metoclopramide, yet despite this notice chose to ignore the information and join consciously in the suppression.

85. Defendants owed a duty to the general public and specifically to Plaintiff to exercise reasonable care in the design, study, development, manufacture, promotion, sale, marketing and distribution of their prescription medications, including the Reglan/metoclopramide at issue in this lawsuit. Defendants failed to exercise reasonable care in the design of Reglan/metoclopramide because as designed, it was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use. Defendants also failed to exercise reasonable care in the marketing of Reglan/metoclopramide because they failed to warn that, as designed,

Reglan/metoclopramide was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use.

86.  Defendants breached their duty and were negligent in their actions, misrepresentations, and omissions toward Plaintiff in that Defendants:

a. Failed to use due care in developing, testing, designing and manufacturing Reglan/metoclopramide so as to avoid the aforementioned risks to individuals when Reglan/metoclopramide was being used for treatment of patients;

b. Failed to accompany their product with proper or adequate warnings regarding adverse side effects and health risks associated with the use of Reglan/metoclopramide and the comparative severity and duration of such adverse effects;

c. Failed to accompany their product with proper or adequate rate of incidence or prevalence of permanent irreversible neurological damage;

d. Failed to provide warnings that accurately reflected the symptoms, scope or severity of the side effects and health risks;

e. Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Reglan/metoclopramide;

f. Failed to provide adequate training or information to medical care providers for appropriate use of Reglan/metoclopramide;

g. Failed to adequately warn consumers and medical prescribers (but instead actively encouraged the sale of Reglan/metoclopramide), about the following: (1) that Reglan/metoclopramide should not be prescribed for more than 12 weeks; (2)

that Reglan/metoclopramide can cause neuromuscular side effects, including, but not limited to, tardive dyskinesia; (3) that Reglan/metoclopramide should be discontinued in the event of involuntary facial, tongue, jaw, limb or trunk movements; and (4) that the health risks posed by Reglan/metoclopramide may become permanent, debilitating, difficult, embarrassing, and painful, necessitating lengthy and/or repeated

visits to the doctor, clinic, or hospital;

h. Failed to adequately test and/or warn about the use of Reglan/metoclopramide, including, without limitation, the possible adverse side effects and health risks caused by the use of Reglan/metoclopramide;

i. Failed to adequately warn users, consumers and physicians about the severity, scope and likelihood of neurological damage and related dangerous conditions to individuals taking Reglan/metoclopramide; and

j. Representing to physicians, including but not limited to Plaintiff' prescribing physician, that this drug was safe and effective for use.

87. The Reglan/metoclopramide was in substantially the same condition when it was ingested by Plainitff as it was in when it left the control of Defendants. Reglan/metoclopramide's capability to cause serious personal injuries and damages such as those suffered by Plaintiff was not due to any voluntary action or contributory negligence of Plaintiff. The Reglan/metoclopramide was consumed by Plaintiff as directed and without change in its form or substance.

88. Defendants' failure to exercise reasonable care in the design and/or marketing of Reglan/metoclopramide was a proximate cause of Plaintiff' injuries and damages. Plaintiff seeks all damages to which they may be justly entitled.

89. Plaintiff claims that Defendants are liable under the theory of strict products liability. Defendants were at all times relevant to this suit, and now are, engaged in the business of designing, manufacturing, testing, marketing, and placing into the stream of commerce pharmaceuticals for sale to, and use by, members of the public, including the Reglan/metoclopramide at issue in this lawsuit. The Reglan/metoclopramide manufactured by Defendants reached plaintiff without substantial change and was ingested as directed. The Reglan/metoclopramide was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiff.

90. Reglan/metoclopramide was unreasonably defective in design and marketing, considering the utility of the product and the risk involved in its use, because as designed and marketed, Reglan/metoclopramide could cause injuries such as those suffered by Plainitffs during foreseeable use. This fact was known to Defendants at the time Reglan/metoclopramide was placed into the stream of commerce, but was not readily recognizable to an ordinary consumer, including Plaintiff. Nonetheless, Defendants failed to warn that Reglan/metoclopramide as designed and marketed was capable of causing serious personal injuries such as those suffered by Plaintiff during foreseeable use. Such a failure to warn rendered the Reglan/metoclopramide unreasonably dangerously defective as designed and marketed.

91. The defective and unreasonably dangerous design and marketing of

Reglan/metoclopramide was a direct, proximate and producing cause of Plaintiff' injuries and damages. Under strict products liability theories set forth in Restatement (Second) of Torts, Defendants are liable to Plaintiff for all damages claimed in this case, including punitive damages.

92.    Defendants were at the time of the acts forming the basis of this lawsuit, and now are, merchants with respect to the Reglan/metoclopramide at issue in this lawsuit. Defendants marketed and promoted their Reglan/metoclopramide as safe and efficacious for its intended uses. The Reglan/metoclopramide consumed by Plaintiff reached Plaintiff without substantial change in its condition and was used by her as intended by Defendants. Defendants expressly and impliedly warranted that the Reglan/metoclopramide were not unreasonably dangerous and instead were merchantable and fit for its intended use and duration by Plaintiff.

93.    Defendants breached these warranties (both express and implied) as the Reglan/metoclopramide was not merchantable, was unfit for its intended use and was unreasonably dangerous when comparing the benefits to the risks associated with its use. Plaintiff was injured as a result of these breaches of warranties.

94.    Defendants, through their advertising, labeling, marketing, and sales/detail persons, made significant representations, which were false, knowing that such representations were false and/or with reckless disregard for the truth or falsity of such representations, with the intent that Plaintiff rely on such material representations; Plaintiff acted in actual and justifiable reliance on such material misrepresentations and Plaintiff was injured as a result.

95. In addition, and in the alternative if necessary, Defendants knowingly omitted and downplayed material information, which omission constitutes a positive misrepresentation of material fact, with the intent that Plaintiff rely on Defendants' misrepresentations; Plaintiff acted in actual and justifiable reliance on Defendants' representations and Plaintiff was injured as a result.

96. Defendants committed constructive fraud by breaching one or more legal or equitable duties owed to Plaintiff relating to the Reglan/metoclopramide at issue in this lawsuit, said breach or breaches constituting fraud because of their propensity to deceive others or constitute an injury to public interests or public policy.

97. Defendants misrepresented to the FDA, Plaintiff, and the health care industry the safety and effectiveness of Reglan/metoclopramide and/or fraudulently, intentionally and/or negligently concealed material information, including adverse information regarding the safety and effectiveness of Reglan/metoclopramide.

98. Defendants made these misrepresentations and actively concealed adverse information at a time when they knew, or should have known, that Reglan/metoclopramide had defects, dangers, and characteristics that were other than what they had represented to Plaintiff and the health care industry generally. Specifically, Defendants misrepresented to and/or actively concealed from Plaintiff and the consuming public that:

a. Reglan/metoclopramide had statistically significant increases in neuromuscular side effects which could result in serious injury;

b. Patients prescribed Reglan/metoclopramide should not take it more than 12 weeks;

c. Reglan/metoclopramide causes neuromuscular side effects and those effects were underreported.

99.  As a direct and proximate result of the fraudulent acts and omissions, suppression and misrepresentation of Defendants, Plaintiff suffered significant and ongoing injuries and damages. Further, because Defendants' conduct was willful, reckless, intentional and maliciously fraudulent, Plaintiff is entitled to an award of exemplary damages.

100.  Plaintiff would further show that the negligent acts and/or omissions of Defendants, as set forth above, constitute an entire want of care so as to indicate that the acts and/or omissions in question were the result of conscious indifference and/or malice so as to give rise to the award of exemplary damages.

101.  Plaintiff would further show that the negligent acts and/or omissions of Defendants, as set forth above, constitute an act or omission,

a. which, when viewed objectively from the standpoint of Defendants, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff, and

b. of which Defendants had actual, subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiff.

102.  The gross negligence of the Defendants was a proximate cause of the injuries and damages suffered by Plaintiff.  As a producing and proximate result of the above-described acts and omissions of Defendants Wyeth, Inc., Schwarz Pharma, Inc., Pliva USA,

Inc., Barr Pharmaceuticals, Inc. Actavis, Inc., and Actavis Elizabeth LLC, Plaintiff have incurred actual damages in excess of $75,000.00:

(1) Reasonable and necessary medical expenses incurred in the past;

(2) Reasonable and necessary medical expenses reasonably likely to be incurred in the future;

(3) Conscious physical pain and suffering experienced in the past;

(4) Conscious physical pain and suffering reasonably likely to be experienced in the future;

(5) Mental anguish in the past;

(6) Mental anguish likely to be experienced in the future;

(7) Physical disfigurement in the past;

(8) Physical disfigurement likely to be experienced in the future;

(9) Physical impairment in the past;

(10) Physical impairment likely to be experienced in the future;

(11) Loss of earnings in the past;

(12) Loss of earnings/earning capacity likely to be experienced in the future;

(13) Pre and post-judgment interest at the lawful rate;

(14) Exemplary damages;

(15) Such other applicable damages as the Court deems appropriate.

WHEREFORE, Plaintiff pray that upon final determination of these causes of action Plaintiff receive a judgment against Defendants Wyeth, Inc., Schwarz Pharma, Inc., Pliva USA, Inc., Barr Pharmaceuticals, Inc. Actavis, Inc. and Actavis Elizabeth LLC as follows:

(a) Actual damages as alleged, jointly and/or severally against Defendants, in excess

of $75,000.00;

(b) Punitive damages alleged against Defendants, including Plaintiff' attorney fees, in excess of $75,000.00;

(c) Costs of court and reasonable attorney fees necessary for preparation of this case

for trial;

(d) Prejudgment interest at the highest lawful rate allowed by law;

(e) Interest on the judgment at the highest legal rate from the rate of judgment until collected; and

(f) All such other and further relief at law and in equity to which Plaintiff may show herself to be justly entitled.

Plaintiff hereby demands a trial by jury.

By: _____

Daniel E. Becnel, Jr. (La. Bar No. 2926)
Matthew B. Moreland (La. Bar No. 24567)
**BECNEL LAW FIRM, LLC**
106 W. Seventh Street
P. O. Drawer H
Reserve, Louisiana  70084
Telephone: (985) 536-1186
Facsimile: (985) 536-6445
Email: dbecnel@becnellaw.com

Morris Bart (La. Bar No. 2788)
Reed G. Bowman (La. Bar No. 30408)
Jeff J. Keiser (La. Bar No. 31805)
**MORRIS BART, L.L.C.**
909 Poydras St., 20th Floor
New Orleans, LA  70112
Telephone: (504) 525-8000
Facsimile: (504) 599-3382

Stephen J. Herman (La. Bar No. 23129)
Russ M. Herman (La. Bar No. 6819)

**HERMAN HERMAN KATZ & COTLAR, LLP**
820 O'Keefe Avenue
New Orleans, La.   70113
Telephone: (504) 581-4892
Facsimile: (504) 561-6024

*Attorneys for Plaintiff*